FILED
SEP 18 2019
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| IN THE MATTER OF THE SEARCH OF | CASE NO. 19MJ4013 |
|---|---|
| One (1) Black Revvl Cellular Telephone Seized in Event# ECJ1908000124 | AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT |

I, Carlos B. Fregoso, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. This affidavit is made in support of an application for a warrant to search:

   One (1) Black Revvl Cellular Telephone (**"Target Telephone"**)
   Seized in Event# ECJ1908000124

   as described in Attachment A, and seize evidence of crimes, specifically: Title 18, U.S.C. § 371 – Conspiracy; Title 8, U.S.C. § 1324(a)(2)(B)(ii) – Bringing in Aliens for Financial Gain; Title 8, U.S.C. § 1324(a)(1)(A)(i) – Bringing Aliens to the United States at Other than a Port of Entry; and Title 8, U.S.C. § 1324(a)(1)(A)(ii) – Transportation of Certain Aliens; Title 8, U.S.C. § 1324(a)(1)(A)(iii) – Harboring Certain Aliens.

2. **Target Telephone** is one of two cellular telephones seized from Kevan Ryan Perez ("Perez") on August 29, 2019, at or about the time of his arrest in the Southern District of California for Transportation of Certain Aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).

3. **Target Telephone** is currently in the possession of the Department of Homeland Security, United States Border Patrol, Chula Vista Border Patrol Station, Chula Vista, California 92173.

4. I believe the items to be seized set forth in Attachment B (incorporated by reference herein) will be found in the item to be searched as described in Attachment A (incorporated by reference herein).

## EXPERIENCE AND TRAINING

5.  I am a United States Border Patrol agent and have been so employed since August 2010. In November 2010, I graduated from the 19-week Basic Border Patrol Training Academy in Artesia, New Mexico where the curriculum covered the Immigration and Naturalization Act (INA), criminal law, and statutory authority, as well as Title 21 of the United States Code (Narcotics violations) and Title 19 of the United States Code (Customs law violations). I have been trained in investigating various violations of Federal Law, including alien smuggling, narcotics smuggling, weapons smuggling, and bulk currency smuggling. I have also worked with, and consulted with, other agents who have extensive experience in these types of investigations.

6.  I am currently assigned to the El Cajon Station Intelligence Team (ECJ SIT). ECJ SIT is tasked with the responsibility of investigating, arresting, and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. ECJ SIT is also tasked with investigating narcotics smuggling, bulk cash smuggling, and assaults on federal officers, theft and damage of government equipment, escapes from federal custody, and a variety of other federal and state offenses. ECJ SIT agents deploy in plainclothes attire and drive unmarked Border Patrol vehicles.

7.  During the course of my employment with USBP, I have participated in several investigations that have resulted in criminal prosecutions. I have also participated in several alien smuggling investigations.

8.  As a USBP agent, I am a Federal Law Enforcement Officer within the meaning of Rule 41(b) of the Federal Rules of Criminal Procedure; that is, a government agent engaged in the enforcement of the criminal laws of the United States. Accordingly, I am authorized to request issuance of federal search and seizure warrants. As an agent with the USBP, my responsibilities include the investigation of possible violations of Immigration and Nationality laws (Title 8, United States Code), including alien smuggling in violation of Title 8, United States Code, Section 1324 and related offenses.

9. Through the course of my training, investigations, work experience and conversations with other law enforcement personnel, I am aware that it is common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones and portable radios, as well as other modes of communication, to further their criminal activities. I am also aware that it is a common practice for alien smugglers to communicate with the smuggled aliens regarding smuggling arrangements, pickup locations, and payments and to do so using cellular telephones and portable radios as well as other modes of communication. Conspiracies involving alien smuggling generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail and text messages referring to the arrangements of travel, pickup and payment, names, photographs, text messages, and phone numbers of co-conspirators and aliens to be smuggled. Finally, alien smuggling conspiracies require detailed and intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this requires planning and coordination in the days, weeks, and often months leading up to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable human cargo.

10. Based upon my training and experience as a USBP agent, and my consultations with other law enforcement officers experienced in alien smuggling investigations, and all of the facts and opinions set forth in this affidavit, I submit the following:

    a. Alien smugglers and traffickers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Alien smugglers and traffickers will use cellular telephones because they are able to actively monitor the progress of the illegal activities from point of origin in Mexico to point of destination in the United States.

  c. Alien smugglers and traffickers and their accomplices will use cellular telephones because they can easily arrange and/or discuss smuggling fees, availabilities of transportation and costs associated with smuggled aliens.

  d. Alien smugglers and traffickers will use cellular telephones to direct, coordinate the transfer and acquisition of payment for smuggling and trafficking fees, request additional fees from aliens and/or their sponsors, and coordinate with drivers to synchronize an exact drop off and/or pick up time of their aliens.

  e. The use of cellular telephones by smugglers and traffickers tends to generate evidence that is stored on the cellular telephones including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

11. The following is based on my personal involvement in this investigation, oral and written reports about this investigation that I have received from federal law enforcement officers, law enforcement record and intelligence checks, conversations with other law enforcement agents involved in this investigation, and my review of records obtained during this investigation. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Telephone**, it does not contain all of the information known to myself or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## STATEMENT OF PROBABLE CAUSE

12. On August 29, 2019, Supervisory Border Patrol Agent (SBPA) S. Scantlin was assigned roving patrol duties within the El Cajon Station's Area of Responsibility (AOR).

13. At approximately 7:33 a.m., an agent from the El Cajon Station's Tactical Operations Center ("TOC") notified agents in the field that they had observed, on the Innovative Camera System, three suspected illegal aliens running northbound through the vineyards in an area known to Border Patrol agents as "Zuellners."

14. Approximately one minute after this information was relayed, Department of Defense ("DoD") personnel assigned to the El Cajon Station advised that they were able to observe a black Chevrolet pickup truck stop along SR-94 on the north side of the road

4

in the area where the TOC had observed the three suspected illegal aliens running northbound. DoD personnel relayed, via service radio, that the truck had stopped along SR-94 and then continued traveling eastbound on SR-94 in an area known to Border Patrol agents as "Split Rock."

15. At approximately 7:38 a.m., SBPA Scantlin observed a black Chevrolet pickup truck matching the description given out by DoD personnel drive by. SBPA Scantlin observed at least four individuals in the pickup truck, including the driver, front seat passenger, and two in the back seat.

16. SBPA Scantlin followed the vehicle, ran records checks through the San Diego Sector Tactical Communications Center ("TCC"), which revealed that the vehicle had expired registration, was last registered in Santa Ana, California, and had not made any recent crossings through the nearest border crossing (which in this case is the Tecate, California Port of Entry).

17. SBPA Scantlin observed the black pickup truck continue to travel eastbound on SR-94 past Buckman Springs Road.

18. At approximately 7:45a.m., SBPA Scantlin initiated a car stop on the black pickup truck along SR-94 east bound just east of Shockey Truck Trail Road. Although SBPA Scantlin activated her lights and siren, the vehicle failed to yield, sped up, and rapidly changed lanes. At approximately 7:47 a.m., the vehicle yielded to the shoulder of SR-94 approximately half of a mile east of La Posta Road, after failing to yield for approximately three miles along SR-94.

19. SBPA Scantlin approached the vehicle on the driver side, identified herself as a U.S. Border Patrol Agent and removed the driver, later identified as Adrian Roman (Perez's co-defendant), and placed him in her vehicle.

20. SBPA Scantlin then went back to the vehicle and observed one person sitting in the front passenger seat (Perez) and five people sitting in the rear seat area of the vehicle (later identified as: Efrain Lino-Gonzalez, Benjamin Lopez-Perez, Edgar Mora-Herrera, Adulfo Perez-Lopez, and Oliver Perez-Perez who are currently in custody and collectively

referred to as the "Material Witnesses"). SBPA Scantlin identified herself as a U.S. Border Patrol Agent and conducted a field immigration inspection on the material witnesses. Perez stated that he was a citizen of the United States by birth. The Material Witnesses individually stated that they were citizens of Mexico by birth and they did not possess any United States immigration documents that would allow them to enter or remain in the United States legally.

21.  Perez, Roman, and the Material Witnesses were all transported to a Border Patrol station for processing.

22.  Perez waived his <u>Miranda</u> rights and elected to make a statement to Border Patrol Agents. In summary, Perez admitted to being in Campo, California for the purpose of alien smuggling for financial gain. Perez admitted to using two cellular phones (including the **Target Telephone**) to communicate with other alien smugglers. During the interview, Perez positively identified the **Target Telephone** as one of the cellular telephones he used to communicate with an alien smuggling coordinator and consented to search in writing. At that time, agents briefly searched Perez's cellular phones for communication linked to alien smuggling. Border Patrol Agents discovered text messages between Perez and smugglers coordinating this alien smuggling event.[1]

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION AS TO THE CELLULAR TELEPHONE

23.  It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary

---

[1] Perez consented in writing to a search of the **Target Telephone** by me. Nothing obtained in the consent search is being relied on for probable cause for this search warrant.

word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

24. Following the issuance of this warrant, I will collect the **Target Telephone** and subject it to analysis. All forensic analysis of the data contained within the **Target Telephone** and its memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

25. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

//
//
//
//
//

## CONCLUSION

26. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that Perez used **Target Telephone** to facilitate the following offenses: Title 18, U.S.C. § 371 – Conspiracy; Title 8, U.S.C. § 1324(a)(2)(B)(ii) – Bringing in Aliens for Financial Gain; Title 8, U.S.C. § 1324(a)(1)(A)(i) – Bringing Aliens to the United States at Other than a Port of Entry; and Title 8, U.S.C. § 1324(a)(1)(A)(ii) – Transportation of Certain Aliens; Title 8, U.S.C. § 1324(a)(1)(A)(iii) – Harboring Certain Aliens.

27. Because **Target Telephone** has been securely stored at the Chula Vista Border Patrol Station after being recovered from Perez at the time of his arrest and at beginning of my investigation of his alien smuggling activities, there is probable cause to believe that evidence of alien smuggling activities committed by Perez exists on the **Target Telephone**. I believe that the date range for this search is from July 31, 2019, up to and including August 29, 2019.

28. I respectfully request that the court issue a warrant authorizing myself, Border Patrol Agents, and/or other federal and state law enforcement officers to search the items described in Attachment A, and the seizure of items listed in Attachment B, using the methodology described above.

Carlos B. Fregoso
U.S. Border Patrol Agent
U.S. Customs and Border Protection

Subscribed and sworn to before me this __18__ day of September, 2019.

HON. WILLIAM V. GALLO
UNITED STATES MAGISTRATE JUDGE

8

# ATTACHMENT A

## PROPERTY TO BE SEARCHED

The following property is to be searched:

>One (1) Black Revvl Cellular Telephone (**"Target Telephone"**)
>Seized in Event# ECJ1908000124

**Target Telephone** is currently in the possession of the United States Department of Homeland Security, United States Border Patrol, and being stored at the Chula Vista Border Patrol Station located at:

>311 Athey Avenue
>San Ysidro, California 92173

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular/mobile device described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in **Target Telephone** for evidence described below. The seizure and search of Target Telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from **Target Telephone** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of July 31, 2019 leading up to and including August 29, 2019:

a. tending to indicate efforts of alien smuggling or conspiracy to smuggle aliens into and within the United States;

b. tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to smuggle aliens into the United States from Mexico, or transport aliens within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling or conspiracy to smuggle aliens into or within the United States;

d. tending to identify travel to or presence at locations involved in alien smuggling or conspiracy to smuggle aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to Target Telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

Which are evidence of violations of 18 U.S.C. § 371, Conspiracy; 8 U.S.C. § 1324(a)(2)(B)(ii), Bringing in Aliens for Financial Gain; 8 U.S.C. § 1324(a)(1)(A)(i), Bringing Aliens to the United States; and 8 U.S.C. § 1324(a)(1)(A)(ii) – Transportation of Certain Aliens; 8 U.S.C. § 1324(a)(1)(A)(iii) – Harboring Certain Aliens.